Barney, J.,
delivered the opinion of the court:
The petition in this case presents a claim against the United States of more than ten millions of dollars, and comes to this court through a reference under the fourteenth section of the Tucker Act (24 Stat. L., 507) of the following Senate bill:
“ [Fifty-eighth Congress, first session.]
“A BILL For the relief of the confederated bands of Ute Indians.
ilBe it enacted by the Senate and House of Representatives of the United States of America in Gongress assembled, That the Secretary of the Treasury be, and he is hereby, authorized and directed to adjust and pay, upon the administrative action of the Secretary of the Interior, all claims against the United States of the White River Utes, Southern Utes, Uncompahgre Utes, Tabeguache, Muache, Capote, Weeminuche, Yampa, Grand River, and Uinta bands of Ute Indians, known also as the ‘ Confederated bands of Ute Indians of Colorado,’ as said Indians are defined in the treaty of March second, eighteen hundred and sixty-eight, and agreement ratified by Congress and said Indians of June fifteenth, *262 eighteen hundred and eighty, arising under treaties and agreements with the United States ratified by Congress, including any and all claims arising from the use of lands for the occupation of railroads and other public highways or public uses not herein excepted from the jurisdiction conferred by this act, and all demands on the part of the United States and claims against said Indians growing out of treaty obligations and agreements ratified by Congress, except judgments of the Court of Claims for depredations committed by said Indians and the capitalized annuity and interest thereon hereinafter provided to be set off against the compensation to said Indians for certain timber and forest reservations; but excluding the claims of said Indians to compensation for lands embraced within the White Eiver Plateau Timber and Land Eeserve, set apart to the United States under Executive order and proclamation of the President, dated October sixteenth, eighteen hundred and ninety-one, and the Battlement Mesa Forest Eeserve, set apart to the United States under Executive order and the proclamation of the President, dated December twenty-fourth, eighteen hundred and ninety-two; against the compensation for said reservations which may hereafter be allowed and paid to said Indians there shall be set off the sum of one million two hundred and fifty thousand dollars, being an amount of money sufficient, at four per centum, to produce annually fifty thousand dollars, together with the interest arising on said fund, annually paid to said Indians per capita in cash under the provisions of section five of the ‘Act to accept and ratify the agreement submitted by the confederated bands of Ute Indians in Colorado for the sale of their reservation in said State, and for other purposes, and to make the necessary appropriations for carrying out the same,’ approved June fifteenth, eighteen hundred and eighty, which sum and the annuity arising therefrom shall not enter into or form a part of any set off to be offered by the United States in the action herein provided for; and the Secretary of the Interior shall report to Congress at its next session the acreage and character of the lands embraced within the said reservation, classifying the same as mineral, agricultural, timber, and stone lands, and shall report the estimated value of each class of said lands per acre. The payment of said claims shall be made out of any moneys awarded to said Indians or found to be due to them or which has been or may be deposited in the Treasury for their benefit arising from the sale and disposition of lands ceded to the United States under the terms of the act approved June fifteenth, eighteen hun *263 dred and eighty, hereinbefore referred to, so far as said fund will satisfy said claims, and after said fund shall be exhausted then payment to be made out of any money in the Treasury not otherwise appropriated. The said Indians may be represented in the prosecution of said claims by Josiah M. Vale, Courtland C. Clements, Kie Oldham, William C. Shelley, Adair Wilson, and William S. Peabody, the attorneys named in the contracts between said Indians and said attorneys on file in the office of the Commissioner of Indian Affairs, bearing date November seventh, eighteen hundred and ninety-six, October thirty-first, eighteen hundred and ninety-six, and July first, eighteen hundred and ninety-seven; and the Secretary of the Treasury is hereby authorized and directed to set apart and pay to said attorneys as their'compensation a sum of money not to exceed fifteen per centum of the sum paid to said Indians, or awarded or found to be due to them or deposited in the Treasury for their benefit as hereinbefore provided.”
Before the hearing of the case the defendants made a motion to dismiss the petition'for want of jurisdiction, which was overruled without prejudice to considering the motion with the case, on its merits, and that question will now be considered.
The bill referred, although in one section, is composed of two distinct parts, the latter division calling for a report from the Secretary of the Interior as a preliminary to a final settlement with the claimant Indians. In a case involving a similar question, this court decided that it was without jurisdiction in a reference under the fourteenth section of the Tucker Act (Bellah v. United States, 39 C. Cls., 396.)
The first division of the bill raises a different question and requires more consideration. It is in effect a direction to the Secretary of the Interior to audit the claim of the petitioners against the United States in compliance with the directions therein given, and thereafter the Secretary of the Treasury is directed to pay to the petitioners such sum as shall be found due them upon such audit.
The bill does not provide for the payment of any definite sum, or, for that matter, of any sum whatever unless something may be found due by the Secretary of the Interior *264 after be shall balance the account between the claimants and the Government in accordance with the directions contained in the bill. It is in fact but a bill to set in motion the Department of the Interior along certain lines prescribed by the measure.
It is contended by the claimants that the direction to the Secretary of the Interior is but declaratory of existing law; that the law devolves upon the Secretary of the Interior the supervision of public business relating to Indians (sec. 441, R. S.), and that all requisitions for the payment of money out of the Treasury for expenditures upon business pertaining to the Interior Department must be signed by the Secretary of the Interior (sec. 444, R. S.). This may well be true, and if the bill had stopped with such declaration of existing law, i. e., stopped with a simple direction to the Secretary of the Interior to audit the account of the claimants with the United States — in other words, to do his existing duty, it would have been a bill without any purpose whatever. But the bill goes much further and directs the Secretary of the Interior to administer upon “ all claims against the United States * * * arising under treaties and agreements with the United States ratified by Congress, including any and all claims arising for the use of lands, for the occupation of railroads and other public highways or public uses not herein excepted from the jurisdiction conferred by this act, and all demands on the part of the United States and claims against said Indians growing out of treaty obligations,” etc.
Thus it will be seen that the bill seeks to confer upon the Secretary of the Interior judicial powers; that is to say, the construction of treaties and agreements, and the determination of the amount due for use and occupation, etc. In other words, it makes the Department of the Interior á court in which is to be settled and adjudicated the matters in difference between the Indians and the Government, and calls upon the Secretary of that department for something more than the mere exercise of his present duty which would have been needless. The bill does not call for the “ payment *265 of a claim ” within the meaning of the fourteenth section of the Tucker Act, but directs the Secretary of the Interior to adjudicate this claim in the manner provided by the bill, and upon such adjudication it is to be paid.
If the bill had become a law the Secretary of the Treasury could have made no payment thereunder until the Secretary of the Interior had determined what amount was due the claimants, because his action would have been a condition precedent to any action on the part of the Secretary of the Treasury. And in that event neither could this court have taken jurisdiction thereunder until the Secretary of the Interior had ascertained the amount due, and payment thereof had been refused by the Secretary of the Treasury, in which case it is probable that a suit would lie here on the amount reported by the Secretary of the Interior as an award authorized by Congress.
What is this court called upon to do by the present reference? There can be but one answer to the question, and that is, that it is asked to do just what it would have been the duty of the Secretary of the Interior to do in case the bill had become a law, and that is to try the lawsuit between parties and determine the amount which shall be recovered.
If Congress desires to give this court jurisdiction to try this lawsuit between these Indians and the Government and finally adjudicate the matter, it will do so by law conferring upon this court that jurisdiction. It will give this court just the same jurisdiction which the present bill seeks to confer upon the Secretary of the Interior.
It is difficult to conceive of a controversy arising between any tribe of Indians and the Government growing out of treaty obligations, payment for support, for removal, for assistance in turning to civilized life, etc., without involying more questions of law than of fact.
It follows, therefore, from the foregoing that the court is without jurisdiction, and this opinion will be certified to Congress accordingly.